THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD G. YOUNGE, Defendant-Appellant.

Fifth District    No. 79-172

Opinion filed April 15, 1980.

Earle McCaskill, of East St. Louis, for appellant.

Charles R. Garnati, State's Attorney, of Marion (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WHITE delivered the opinion of the court:

The defendant, who was charged with having committed the offense

of driving while license revoked, in violation of 6-303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 6—303), waived his right to a trial by jury, was tried by the court, found guilty, sentenced to 45 days in the Williamson County Jail, and fined $500. He appeals from this judgment.

The People's evidence at the trial consisted of the testimony of the arresting officer, Robert P. Absher, an Illinois State Trooper, and People's exhibit No. 1, a certificate of the Secretary of State certifying that Richard G. Younge "did not have a valid drivers license on January 6, 1977," and an order of revocation showing the defendant's drivers license had been revoked on June 3, 1971. The defendant's evidence consisted of the testimony of the defendant and one Ripley Young.

Trooper Absher testified that he was on duty on January 6, 1977, at 3:30 a.m. He investigated a report of a disabled vehicle on Interstate 57, near the truck weigh station, south of Marion, Illinois. As he arrived at the weigh station he observed a car with an official House of Representatives license plate and that the license plate was "kind of dangling." Before proceeding to the weigh station he checked the automobile for occupants. Finding none, he pulled onto the ramp to go to the weigh station. The defendant approached the trooper's automobile carrying a gas can. The defendant got in the trooper's automobile and they proceeded north towards Marion to get gasoline for the defendant. On the way to Marion, according to the trooper's testimony, defendant stated to him several times that he was the driver of the car. There was also a conversation between the defendant and the trooper as to why the defendant did not get gasoline at the intersection of Ullin Road and Interstate 57. The defendant told him that he did not get on Interstate 57 at Ullin but got on at Dongola. The trooper testified that it was his responsibility to make out a "motorist assistance report," and for that purpose he requested the defendant to produce his drivers license. When the defendant failed to produce his drivers license, the trooper radioed to the proper authorities for a check of the defendant's drivers license. It was reported to him that the defendant's drivers license was revoked. He then placed the defendant under arrest, transported him to the sheriff's office in the Williamson County courthouse and filed a complaint for driving while license revoked.

People's exhibit No. 1 was received in evidence, over the objection of the defendant. The defendant objected because, "there's been no evidence shown that a drivers license was needed in this testimony." The defendant testified that Ripley Young was driving him from Cairo, Illinois, to East St. Louis and that they had previously run out of gas south of the weigh station in question. He further testified that the weather was very cold, 10 to 15 degrees below zero, that "it was not fit for man or

beast." Because of the extreme cold weather, Ripley Young could not assist the defendant in putting gasoline in the automobile the first time they ran out of gas. Defendant stated that he was dressed in big red insulated coveralls. He testified that when they ran out of gas the second time, Ripley Young left him, flagged down a truck, and headed south towards Cairo. He testified that Ripley Young was going back to Cairo to get his van, and come back to assist the defendant. Defendant stated that Ripley Young walked about a quarter of a mile before flagging down a truck.

On cross-examination he stated that he and Ripley Young flagged down the truck.

Ripley Young testified that he was driving the automobile, they ran out of gas two times, the night was very cold, he stopped a truck going south because he did not have warm clothing and he went home when he arrived in Cairo.

Defendant insists he did not drive the automobile on the morning in question.

The defendant raises three issues on appeal; (1) the defendant was not proven guilty beyond a reasonable doubt; (2) the trial court erred in admitting evidence concerning the status of defendant's drivers license; (3) the sentence is excessive.

■■ It is well settled that the only elements necessary to prove the offense of driving a motor vehicle after the revocation of one's driving privileges are: (1) the act of driving a motor vehicle on the highways of this State; and, (2) the fact of the revocation of the drivers license or privileges. *People v. Papproth* (1977), 56 Ill. App. 3d 683.

The question confronting the court in this case is whether the act of driving a motor vehicle while license is revoked on the highways of this State can be proven by circumstantial evidence and, if so, was the defendant proven guilty beyond a reasonable doubt. Of course!

■■ ■ It has long been the law of this State that "[c]ircumstantial evidence, to warrant a conviction of crime, must be of a conclusive nature and tendency, leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused, and no one else, committed the crime charged." *(People v. Ahrling* (1917), 279 Ill. 70, 80. See also *People v. Toler* (1975), 32 Ill. App. 3d 793.) In *Toler* the defendant was convicted of driving while intoxicated. He was in the back seat of the automobile and there was no one near or around the automobile. This court held "[o]bservation of the defendant in the act of driving is not an indispensible prerequisite to conviction of driving while intoxicated, provided the act of driving while intoxicated is established by other credible and substantial evidence, either direct or circumstantial." 32 Ill. App. 3d 793, 799; *People v. Garnier* (1959), 20 Ill. App. 2d 492; *People v. Mundorf* (1968), 97 Ill. App. 2d 130.

■ The trial judge in this case was confronted with the conflict in the testimony. The defendant's testimony, even if unrebutted, need not be believed by the trier of fact. (*People v. Lahori* (1973), 13 Ill. App. 3d 572.) It is the function of the trier of fact to weigh testimony, judge the credibility of the witnesses, and determine factual matters in debatable sets of circumstances. (*People v. Nicholls* (1969), 42 Ill. 2d 91.) We cannot say in this case that the finding of the trial court is contrary to the manifest weight of the evidence. The evidence taken as a whole was sufficient for the trial judge to conclude that the defendant was driving the automobile on the morning in question.

The defendant raises the issue that evidence of the revocation of his drivers license should not have been introduced.

The legislature of this State has mandated that the Secretary of State "shall maintain appropriate records of all licenses and permits refused, cancelled, revoked or suspended * * * " (Ill. Rev. Stat. 1975, ch. 95½, par. 6—117) and, further, that "the Secretary of State may certify an abstract of a driver's record upon request therefor" (Ill. Rev. Stat. 1975, ch. 95½, par. 6—118(c)). A certified copy from the Secretary, maintained pursuant to statutory mandate, under his signature and seal are admissible into evidence. *People v. Wallace* (1973), 9 Ill. App. 3d 129; *People v. White* (1960), 24 Ill. App. 2d 324; *People v. Manikas* (1969), 106 Ill. App. 2d 315.

To bolster his argument that the trial court erred in admitting the certificate of the Secretary of State into evidence, defendant places reliance upon *People v. Francis* (1971), 4 Ill. App. 3d 65. In *Francis*, the arresting officer found the defendant standing 10 to 15 feet away from the automobile in question, with one of its wheels on the highway. There was no one near the automobile except the defendant, and the defendant, when asked if he needed assistance in removing the automobile from the highway, stated he would move it. The officer then asked the defendant for his drivers license and the defendant failed to produce a drivers license. The officer then checked with headquarters, was informed that the defendant's license was revoked and arrested the defendant.

■ ■ The *Francis* case is of little assistance to the defendant. This case was decided solely upon the issue of whether, under this set of circumstances, the officer had a right to demand the defendant to display his license pursuant to 6—112 of the Illinois Vehicle Code (Ill. Rev. Stat. 1969, ch. 95½, par. 6—112), which states in part: "Every licensee * * * shall have his drivers license or permit in his immediate possession at all times when operating a motor vehicle and * * * shall display such license * * * upon demand * * * ." The *Francis* court stated that the People did not raise or argue the issue, that, under circumstantial evidence, the defendant must have driven the automobile to the place of occurrence. The defendant Younge argues that the officer did not have authority,

under the circumstances of this case, to require him to produce his drivers license. The defendant's argument must fail on two counts: (1) the officer requested the drivers license to assist him in making a report; and (2) the defendant was driving an automobile with a State Representative's license plate during the very early morning hours, on a very cold day, dressed in red insulated coveralls. The defendant, in his testimony, stated that, "I think he thought I was * * * with the big red suit and floppy hat and everything * * * that I was an imposter * * * or I had stolen the car or was involved some way. That car didn't really look the way people would picture the way a Representative's car would look * * * ." It was the arresting officer's right and duty to demand the reproduction of the defendant's drivers license, under these circumstances.

■ Defendant further states that his sentence was excessive. At the sentencing hearing held herein, evidence was introduced that the defendant, since 1967, had been convicted of seven ordinance violations, four violations of a restricted permit, one violation for no valid drivers license, and one out-of-State driving violation. Further evidence was introduced that the defendant's drivers license was suspended three times and revoked two times. At the time the defendant was arrested, 6—303 of the Illinois Vehicle Code stated that, "(1) Any person who drives a motor vehicle on any highway of this State at a time when his drivers license * * * is revoked or suspended * * * shall be guilty of a Class A misdemeanor and shall be imprisoned for not less than 7 days."

Supreme Court Rule 615(b)(4) (58 Ill. 2d R 615(b)(4)) allows the reduction of sentences by a reviewing court. Our supreme court in the recent case of *People v. Lykins* (1979), 77 Ill. 2d 35, 40, stated, " 'It is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we might have imposed a different sentence had that function been delegated to us.' " (See also *People v. Dukett* (1975), 33 Ill. App. 3d 863.) The sentence imposed by the trial court is within the range prescribed by the legislature. In view of the defendant's driving record, the penalty imposed is not only not excessive but appears to be most lenient under the facts of this case. *People v. Rusch* (1971), 3 Ill. App. 3d 500.

We affirm the judgment of the trial court.

JONES, P. J., and SPOMER, J., concur.